**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JEREMY M. NOEL,**

    **Plaintiff,**

**v.**                                                                         **Case No.  8:07-cv-1128-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was 33 years of age at the time of his administrative hearing in December 2005. Plaintiff has a high school education. His past relevant work was as an irrigation technician at a golf course, a materials handler, a machine operator, and a car detailer. Plaintiff applied for disability benefits and Supplemental Security Income payments in March 2003, alleging disability as of March 10, 2002, by reason of injuries to his left leg and hip. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").[1]  The Plaintiff was represented at the hearing by counsel and testified in his own behalf.  Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he has been unable to work full-time since he was severely injured in a motor vehicle accident in March 2002.  He underwent two surgeries and a rod was placed in his left femur.  Plaintiff testified that he used a walker for about nine months after the surgeries.  He started physical therapy after about a year and half, but it did not last long because he did not have insurance.  Plaintiff testified that he also hit his head in the accident and was in a coma.  He believes that he is not as sharp as he was prior to the accident.  He gets frustrated and angers quickly.

Plaintiff stated his main problem is his left leg and hip.  He testified that he still is unable to walk well or to lift anything heavy.  He uses a cane although he can walk without one at a very slow pace.  By his account, walking causes constant pain.  Plaintiff can lift ten pounds but cannot carry the same.  He is unable to go up stairs without holding on to the walls or using handles.  As he describes it, his hip stiffens and his left knee swells up and his whole upper leg is painful.  Without medication, Plaintiff indicated the pain in his hip was at a level eight on a scale of one to ten, with ten being the greatest pain.  Similarly, he indicated that the pain in his leg was at a level seven.

---

[1]The hearing in this case was conducted by video-conferencing, with the Plaintiff appearing at a teleconference center in Clearwater, Florida, and the ALJ presiding in Tampa, Florida.  (R. 19).

Plaintiff acknowledged that for the prior seven months he had been working at a company that manufactured vinyl windows. His job required little lifting and he used a machine to punch weep holes in vinyl material. The owners accommodated his condition by allowing him to sit while working. Although his work is considered full-time, he misses work one to two days per week because of his condition and he is constant pain when working. After work, he comes home, lays down and does nothing. Although he is permitted to sit at the job, sitting is uncomfortable because of his hip and he experiences discomfort after ten minutes.

Plaintiff has been prescribed pain medications for relief of his hip and leg pain. He has also been prescribed Zoloft. His care presently was through hospital emergency rooms because of a lack of insurance. Percocet helps some with the pain but he is not permitted to take it during the day when he is at work; instead, he uses lots of Advil. According to his testimony, the medications make him "real hot" and he gets "slurred and lazy." *See* Plaintiff's testimony (R. 302-330).

Counsel for the Plaintiff suggested that he had a witness available to corroborate Plaintiff's testimony. The ALJ, however, declined to permit the testimony. *See* (R.321).

The ALJ next took testimony from Jeffrey Carlisle, a vocational expert ("VE"). He testified upon an assumption of an individual of Plaintiff's age, education, and work experience capable of performing up to light level exertional work with standing and/or walking a total of two to four hours in an eight-hour day; change of position every thirty minutes; only occasional operation of foot controls with the left leg; no climbing ladders, scaffolds, ropes, or work at unprotected heights; the avoidance of concentrated exposure to

extreme cold; and only occasional kneeling, balancing, climbing stairs, crouching, and crawling. On this hypothetical, which the VE understood would require unskilled work and suggested was "best profil[ed]" on a sedentary level with a sit-stand option, the VE identified jobs such as assembler (DOT § 706.687-010), message taker (DOT § 230.663-010), and packager (DOT § 920.587-018) as jobs available to such individual in the local and national economy. The VE explained that at the light exertional level, the occupational base would be eroded by 50% to accommodate the hypothetical. Nonetheless, at that level, the VE identified light jobs in the same assembler and packager classifications, as well as cashier jobs (DOT § 211.467-030) which would be available. If the hypothetical individual missed one to two days of work per week, none of these jobs or any other jobs existing in the national economy would be available. *See* VE's testimony (R. 333-36).

Also before the ALJ were reports by Plaintiff's mother and his employer, as well as records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of May 26, 2006, the ALJ determined that while Plaintiff has a severe impairment related to status post left femur fracture and was disabled during the period of March 10, 2002, through April 3, 2003, he experienced medical improvement as of April 4, 2003. From that date through March 25, 2005, the date Plaintiff again engaged in substantial gainful activity, he had the residual functional capacity to perform light exertional work. Upon this finding and the testimony of the VE, the ALJ found Plaintiff could perform other work available to him in the local and national economy during this period. Consequently, the Plaintiff was not disabled. Further, since at least March 26, 2005, through the date of

decision, Plaintiff had engaged in substantial and gainful activity and therefore was a not disabled during this period. Thus, the ALJ concluded that Plaintiff's disability ended April 4, 2003, and he was entitled to a closed period of disability from March 10, 2002, through March 3, 2003. (R. 19-30). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of*

*Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Where, as here, a claimant is found disabled, the regulations provide a sequential evaluation process for determining whether an individual's disability has ceased. *See* 20 C.F.R. §§ 404.1594(f), 416.994.

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the ALJ properly consider the exertional limitation of claimant's ability to work subsequent to April 3, 2003?; and

(2) Did the ALJ impermissibly engage in "sit and squirm" jurisprudence?

By his first claim, Plaintiff maintains that the medical evidence does not support his ability to perform light work, even after the period when the ALJ concluded he had experienced medical improvement. Citing a consultative evaluation performed in July 2003, Plaintiff urges that permanent limitations in his hip and leg dictated he was capable of sedentary work at most. By this argument, since the VE only identified work at the light exertional level, there is no evidence of sedentary jobs Plaintiff could do with his limitations. Plaintiff further complains that the ALJ failed to credit some limitations reflected in the medical record in his questioning of the VE. In sum, Plaintiff agrees that he was disabled through April 3, 2003, but urges that the conclusion that he could do light work thereafter is unsupported by the medical record and. Furthermore, since the VE only identified light exertional jobs, Plaintiff contends the ultimate conclusion that he could work is also unsupported by substantial evidence.

In response, the Commissioner argues that the ALJ properly concluded that the medical evidence supported an improvement in Plaintiff's condition related to his ability to work such that he was no longer disabled on and after April 4, 2003. Likewise, the Commissioner urges that the medical record supports the ALJ's conclusion that Plaintiff was capable of a range of light exertional work thereafter. Insofar as Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the VE did not identify sedentary jobs he could perform, the Commissioner urges that this contention is inaccurate in

7

light of the VE's testimony. In any event, he urges this is not error since Plaintiff could do light exertional jobs.

Upon my review, I am obliged to agree that the ALJ's finding that Plaintiff's records revealed medical improvement related to his ability to work as of April 4, 2003, is supported by substantial evidence. However, the issue of whether Plaintiff could do light exertional work thereafter and whether the matter was fully and properly addressed by the VE are much closer issues.

As the decision reflects, the Plaintiff was found disabled prior to April 4, 2003, because his condition met the criteria of the listing at 1.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1, in that he had undergone reconstructive surgery of a major weight-bearing joint resulting in an inability to ambulate.[2] (R. 24). Over the course of his care thereafter by Paul Lewis, M.D., his fracture healed albeit with significant heterotopic bone formation.[3] Plaintiff's ability to ambulate improved slightly to where, as of April 3, 2003, he was able to walk unassisted but with a limp. *See* (R. 180-84). Thus, the ALJ could properly conclude

---

[2]Listing 1.03 states, "*Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Inability to ambulate is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . ."

[3]Heterotopic bone formation is the abnormal formation of true bone within the extraskeletal soft tissues. *See* www.emedicine.com/radio/byname/heterotopic-ossification.htm (last visited July 15, 2008).

that as of April 4, 2003, "claimant walked with a limp, but was fully weight-bearing and no longer required a walker for support while ambulating." (R. 25). There was also some objective support for the ALJ's conclusion that as of that date, the fracture was fully healed. *See* (R. 185-86, 188, 190-91, 263). Additionally, as of April 4, 2003, the evidence permitted the conclusion that by reason of his slightly improved ambulation, Plaintiff no longer met the listing at 1.03.

Whether Plaintiff's improvement was such that he was then capable of meeting the demands of a wide range of light exertional work is more problematic.[4] Dr. Lewis, Plaintiff's treating doctor, certainly never indicated such.[5] Neither did David P. Kalin, M.D., the consulting examiner who examined Plaintiff in July 2003 upon request from the SSA. By Dr. Kalin's account, while Plaintiff "was able to walk without a crutch with significant limp left leg," he was "unable to stand without supporting himself with the right shoulder. Standing on

---

[4] Here, the ALJ determined Plaintiff had the residual functional capacity to perform a wide range of light exertional work. (R. 25). Residual functional capacity ("RFC") is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. Light exertional work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] Dr. Lewis did not comment specifically on Plaintiff's functional capacity. His treatment record of April 2003 indicated only that Plaintiff had mild difficulty ambulating and that he would send Plaintiff to an orthopedist, start Plaintiff on Naproxen for pain, and consider additional physical therapy. (R. 180).

his right leg. . . ." (R. 198). Dr. Kalin concluded Plaintiff should avoid ambulation without an assistive device (crutch or cane) and standing for more than 15-30 minutes without such assistive device, as well as repetitive or strenuous bending or lifting, kneeling, squatting, climbing stairs, driving a stick shift and all other activities that may aggravate his underlying condition.[6] (R. 199-200).

Apart from these reports, the ALJ had only the report of a nonexamining doctor on which to base his RFC determination as Plaintiff apparently had no other medical care until 2005. By the nonexamining doctor's account, the medical record revealed Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk for a total of at least 2 hours in the workday, and sit for a total of about 6 hours in the workday. Plaintiff would be further limited to only occasional pushing or pulling with his left leg and could not climb ropes or scaffolds, and he had to avoid concentrated exposure to extreme cold. (R. 202-08). The assessment noted the consultative exam by Dr. Kalin. In addressing the credibility of Plaintiff's subjective complaints, Dr. Kalin noted that Plaintiff was credible and "should be able to function in a sedentary setting." (R. 207).

While I fully recognize that the duty to evaluate and weigh the evidence rests with the ALJ and not the court, I find that the ALJ's conclusion that Plaintiff could do light exertional work as of April 4, 2003, is not supported by the medical record. Here, the ALJ gave controlling weight to the conclusion of the reviewing, nonexamining doctor that Plaintiff could lift and carry 20 pounds on occasion and 10 pounds frequently. This conclusion is

---

[6]The ALJ found Dr. Kalin also limited Plaintiff to carrying 10 pounds while walking. (R. 23).

inconsistent with Dr. Kalin's report that Plaintiff was restricted to carrying 10 pounds.[7] The report is also at odds with Dr. Kalin's opinion that Plaintiff not walk without an assistive device and stand for more than 30 minutes without such a cane or crutch because it does not address the need for such. Given that there is no explanation for discounting Dr. Kalin's assessment, the ALJ was obliged to give his findings greater weight than those of the nonexamining doctor.[8] *See* 20 C.F.R. §§ 404.1527 (d)(1), 416.927(d) (1) (recognizing that greater weight is generally given to the opinions of examining medical sources than to the opinions of nonexamining sources); *see also Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (providing that the opinions of nonexamining doctors are entitled to little weight when contrary to those of examining physicians). Additionally, it is worth noting that even the nonexamining doctor limited Plaintiff to 2 hours of walking and/or standing during an 8-hour workday whereas the ALJ determined that Plaintiff could walk and/or stand for 2 to 4 hours in an 8-hour workday. *Compare* (R. 203) *with* (R. 25).

---

[7]There are also inconsistencies between these doctors on Plaintiff's postural limitations as well, but these seem to have been fairly reconciled in the RFC assessed by the ALJ.

[8]The ALJ's failure to explain his reasons for rejecting Dr. Kalin's opinion in part constitutes reversible error. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Although the ALJ recognized his obligation to consider opinions from treating doctors, examining doctors, and nonexamining doctors and weigh the opinions accordingly, he nonetheless accorded controlling weight to the nonexamining doctor's opinion after erroneously concluding that it was not contradicted by the reports of treating or examining physicians. (R. 26-27).

In light of the above, the ALJ's RFC determination is not supported by substantial evidence and the decision is remanded for application of the correct standards.[9] *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (providing that, if the [ALJ] committed an error of law, the case must be remanded for application of the correct legal standard.); *see also Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (providing that, if the reviewing court is unable to determine from the [ALJ's] decision that the proper legal standards were applied, then remand for clarification is required.). On remand, the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given. *See Sharfarz*, 825 F.2d at 279. In doing so, the ALJ is cautioned that it is improper to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

---

[9]Furthermore, since the ALJ did not employ the proper RFC, the VE's conclusions cannot support the decision. *See Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). To this end, it is appropriate to note that the hypothetical improperly assumed the ability to lift and carry 20 pounds and no consideration was given to the need for an assistive device to stand or walk. While I agree with the Commissioner that the VE purportedly identified certain light exertional jobs that could be performed at the sedentary level, even that testimony is suspect. My review of the DOT suggest that the jobs of assembler (DOT § 706.687-010) and message taker (DOT  § 230.663-010) both require physical demands in excess of those for sedentary work. Moreover, the message taker job is described by the DOT as that of deliver, outside (i.e., a messenger or courier). Given that description, it is doubtful that the work could be performed with a sit/stand option and such was not addressed. Furthermore, contrary to the VE's testimony, the job of packager (DOT § 920.587-018) requires work at the medium exertional level. Finally, although the VE indicated that his testimony did not conflict with the DOT, it appears that it does.

On the above conclusions, it is unnecessary to address Plaintiff's second claim that the ALJ engaged in "sit and squirm" jurisprudence in arriving at this conclusion.[10] *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). However, on remand, the ALJ is cautioned that, while he may consider Plaintiff's appearance and demeanor at the hearing, he may not subjectively arrive at an index of traits which he expects Plaintiff to manifest at the hearing and then deny the claim if Plaintiff. *Compare, Norris V. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) *with Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982); *Wilson v. Heckler,* 734 F.2d 513, 517-18 (11th Cir. 1984). Likewise, the ALJ cannot reject Plaintiff's pain testimony based on his own observations of Plaintiff's appearance at the hearing and his own indicia for evaluating pain. *Johns v. Bowen*, 821 F.2d 551, 556-57 (11th Cir. 1987). Finally, in order to avoid future problems, the ALJ would be well-advised to address with specificity Plaintiff's allegations pertaining to his ability to sit.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the

---

[10]To this end, the ALJ noted that Plaintiff remained sitting during the roughly one hour hearing without any facial gestures or grimaces of pain, and he walked out of the courtroom with a limp but no assistive device and no other difficulty was observed. The ALJ then concluded that Plaintiff exaggerated his current symptoms and restrictions. (R. 26).

13

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 24th day of July 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record